UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JOAN JETT, KENNETH LAGUNA and          :
CARIANNE MUSIC, INC.,
                                       :
                    Plaintiffs,
                                       :
       -against-
                                       :   04 Civ. 9466 (RMB)(HBP)
THOMAS FICARA, d/b/a "Reach
Entertainment," REACH                  :   REPORT AND
ENTERTAINMENT, INC.,                       RECOMMENDATION
ENTERTAINMENT UK, LTD.,                :
SONY MUSIC ENTERTAINMENT UK,
BERTUS DISTRIBUTIE and MSI             :
MUSIC CORP., d/b/a "MSI of Miami,"
                                       :
                    Defendants.
                                       :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE RICHARD M. BERMAN, United States

District Judge,


I.   Introduction


            On February 24, 2005, the Honorable Richard M. Berman,

United States District Judge for the Southern District of New

York, referred this matter to me to conduct an inquest and to

issue a report and recommendation concerning plaintiff's damages.

Although no default had been entered as to any defendant prior to

the Order of Reference, the reference was issued while there was

a pending motion, brought on by an Order to Show Cause issued by

Judge Berman on January 13, 2005, for a default judgment as to

defendants Ficara and Reach Entertainment, Inc. ("Reach") (Docket
Item 13).  Based on this sequence of events, both plaintiffs'
counsel and I understood the Order of Reference to refer this
matter for an inquest as to defendants Ficara and Reach.

Pursuant to the Order of Reference, I issued  Schedul-
ing Orders to Ficara and Reach, both dated April 28, 2005,
directing plaintiffs to serve and file proposed findings of fact
and conclusions of law as to each by June 30, 2005 and directing
Ficara and Reach to submit responsive materials by July 29, 2005.
Each of my April 28, 2005 Scheduling Orders further provided that
if the defendant to whom it was directed:

> (1) FAIL[ED] TO RESPOND TO PLAINTIFFS' SUBMISSIONS, OR
> (2) FAIL[ED] TO CONTACT MY CHAMBERS BY JULY 29, 2005
> AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO
> ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON
> THE BASIS OF PLAINTIFFS' WRITTEN SUBMISSIONS ALONE
> WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine
> Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d
> 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity
> Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t
> [is] not necessary for the District Court to hold a
> hearing, as long as it ensured that there was a basis
> for the damages specified in a default judgment.")

(Emphasis in original).

A copy of the April 28, 2005 Scheduling Order that was
directed to Ficara was sent to him at 211 Priority Point Street,
Henderson Nevada, 89012.  A copy of the April 28, 2005 Scheduling
Order that was directed to Reach was mailed to it at 1631 Eques-
trian Drive, Henderson, Nevada 89015.  Neither has been returned
to my chambers as undeliverable.

On plaintiffs' application, the date for plaintiffs' submissions was subsequently extended to July 13, 2005 and the date for the responses of Ficara and Reach was extended to August 12, 2005.  The Orders extending these dates contained the same admonition quoted above.  A copy of the Order applicable to Ficara was mailed to him at 211 Priority Point Street, Henderson Nevada, 89012.  A copy of the Order applicable to Reach was mailed to it at 1631 Equestrian Drive, Henderson, Nevada 89015. Neither of these two Orders has been returned to my chambers as undeliverable.

Plaintiffs timely submitted proposed findings of fact and conclusions of law supported by evidentiary material. Neither Ficara nor Reach has made any written submission to me, nor has either contacted my chambers in any way.

Accordingly, on the basis of plaintiffs' written submissions alone, I respectfully recommend that plaintiffs' motion for a default judgment be granted as to Ficara and Reach, that each be permanently enjoined from infringing the plaintiffs' copyrighted works and that judgment be entered in plaintiffs' favor against Ficara and Reach, jointly and severally in the amount of $250,000.

II.   Findings of Fact

    A.   Nature of Action

        1.   This is an action for copyright infringement of plaintiffs' registered musical works.[1]

    B.   The Parties

        2.   Plaintiff Carianne Music, Inc. (hereinafter "Carianne") is a corporation organized and existing under the laws of the state of New York, with its principal place of business at 636 Broadway, New York, New York 10012 (Compl. ¶ 3[2]).

        3.   Plaintiff Joan Jett is a citizen of the state of New York (Compl. ¶ 4).

_____

[1]In their complaint, plaintiffs also asserted claims against Ficara and Reach for unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition.  Since plaintiffs' proposed findings of fact and conclusions of law do not address these latter two claims in any respect, I deem them to be abandoned.

[2]As a result of Ficara and Reach's default, all the allegations of the Petition, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. E. River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

4.   Jett is a famous musician and performer.  Jett has become a figurehead for several generations of musical performers, especially female performers (Compl. ¶ 15).

5.   Jett first achieved fame as a member of the musical group known as "The Runaways" which was formed in or about 1975 (Compl. ¶ 16).

6.   As a solo artist, Jett has written and recorded numerous popular songs since the early 1980's.  Jett has been featured on television shows, in movies, and starred in the Broadway musical The Rocky Horror Picture Show.  Jett's songs have been prominently featured in a variety of movies, such as Shrek, Dazed and Confused, Days of Thunder and Striptease and most recently, Bridget Jones, The Edge of Reason.  Jett's songs have been prominently featured in advertisements for banks as well as national sporting events (Compl. ¶ 17).

7.   Jett has released albums and continued to perform at all times since 1975 (Compl. ¶ 18).

8.   Jett regularly performs for various charities and governmental organizations, ranging from local firefighting companies to appearances for overseas United States troops stationed in Afghanistan (Compl. ¶ 19).

9.   Plaintiff Kenneth Laguna is a citizen of the state of New York (Compl. ¶ 5).

10.   Laguna is also a songwriter and performer (Compl.
¶ 20).

11.   Laguna's career began as an artist, songwriter and
producer for well known acts such as The Ohio Express, The Lemon
Peppers, Bill Medley, Jay and the Americans, Tony Orlando, Edwin
Star and Darlene Love.  Laguna is also a member of the band Tommy
James and the Shondels (Compl. ¶ 21).

12.   Defendant Thomas Ficara d/b/a Reach Entertainment
is an individual with an address at 211 Priority Point,
Henderson, Nevada 89012, and business address at 1631 Equestrian
Drive, Henderson, Nevada 89015 (Compl. ¶ 6).

13.   Upon information and belief, Ficara has been doing
business as Reach Entertainment for more than ten (10) years
(Compl. ¶ 22).

14.   Defendant Reach is an entity organized and exist-
ing under the laws of the state of Nevada, with an address at
1631 Equestrian Drive, Henderson, Nevada 89015 and 2901 Colanthe
Ave., Las Vegas, Nevada 89102 (Compl. ¶ 7).

15.   Reach is owned, operated and controlled by Ficara
(Compl. ¶ 23).

16. Reach is merely used as the instrument of Ficara
(Compl. ¶ 24).

17.  With respect to all acts described herein, the acts of Reach are also the acts of its officers, and vice versa (Compl. ¶ 25).

C.  Facts Underlying
    Plaintiffs' Claims

18.  At the end of the 1970's, Laguna began working with Jett as a producer, collaborator and musician (Declaration of Kenneth Laguna in Support of Default Judgment, dated July 14, 2005 ("Laguna Decl."), ¶ 9).

19.  Laguna knew Jett as a member of the group The Runaways.  Although The Runaways did not have huge commercial success in the United States, their music was very successful in other countries and was well regarded in the music industry. Jett was the group's guitarist, singer and songwriter (Laguna Decl. ¶ 10).

20.  Despite the success of The Runaways, no major record labels were willing to sign Jett to a recording contract. Jett and Laguna used their personal savings to press records and set up their own system of independent distributors.  In 1980 they released an album entitled Joan Jett[3] (Laguna Decl. ¶ 11).

_____

[3]Some of the copyrighted works discussed in this report and recommendation are individual songs.  Other copyrighted works are what used to be referred to as albums, i.e. a collection of songs recorded on one or more discs and sold as a single unit.  Some of the songs discussed have the same name as the albums on which
(continued...)

21.  <u>Joan Jett</u> was a commercial success and resulted in a contract among Jett, Laguna and Boardwalk Records, Inc. ("Boardwalk").  Boardwalk re-released <u>Joan Jett</u> under the title <u>Bad Reputation</u>.  <u>Bad Reputation</u> was also a commercial success (Laguna Decl. ¶ 12).

22.  In December 1981, Boardwalk issued a second album by Jett entitled <u>I Love Rock 'N' Roll</u>.  The album reached the Top Five of the BillBoard charts (Laguna Decl. ¶ 13).

23.  Jett and Laguna initially owned the copyright to all the recordings on the album <u>Joan Jett</u>.  These rights were transferred to Boardwalk when the album was re-released as <u>Bad Reputation</u> (Laguna Decl. ¶ 14).

24.  Boardwalk also originally owned all of the copyrights to the recordings on the album <u>I Love Rock 'N' Roll</u> (Laguna Decl. ¶ 15).

25.  In May 1983, Jett and Laguna decided to leave Boardwalk and entered into an agreement under which Boardwalk's copyrights in <u>Bad Reputation</u> and <u>I Love Rock 'N' Roll</u> would be transferred to a company named Jett Lag, Inc. ("JLI").  JLI was wholly owned by Jett and Laguna (Laguna Decl. ¶¶ 16-17).

---

[3](...continued)
they are recorded.  To avoid confusion, I refer to an individual song, I enclose the title in quotation marks; when I refer to an album, I underline the title.

26.   The total value of the consideration provided to Boardwalk for the option to purchase the copyrights and for the copyrights themselves was $3,310,000 (Laguna Decl. ¶ 23).

1.   The Sound Recording
     Copyrights in Issue

27.   The album <u>Bad Reputation</u> included recordings of the following compositions:

(a) "Bad Reputation"
(b) "Make Believe"
(c) "You Don't Know What You've Got"
(d) "You Don't Own Me"
(e) "Too Bad on Your Birthday"
(f) "Do You Want Touch Me (Oh Yeah)"
(g) "Let Me Go"
(h) "Doing All Right With the Boys"
(i) "Shout"
(j) "Jezebel"
(k) "Don't Abuse Me"
(l) "Wooly Bully"

(Laguna Decl. ¶ 33).

28.   All of the recordings on <u>Bad Reputation</u> were registered with the Copyright Office by Registration SR-28-227 which was issued to Boardwalk (Laguna Decl. ¶ 34 and Exhibit 7 thereto).

29.   The individual recordings of "Do You Want to Touch Me (Oh Yeah)" and "Victim of Circumstance" were also registered with the Copyright Office by Registration SR-36-457, also issued to Boardwalk (Laguna Decl. ¶ 35 and Exhibit 8 thereto).

9

30.   The individual recordings of "You Don't Own Me" and "Jezebel" were also registered with the Copyright Office by Registration SR-24-799, also issued to Boardwalk (Laguna Decl. ¶ 36 and Exhibit 9 thereto).

31.   Through a series of assignments, the foregoing copyrights were ultimately assigned to Carianne (Laguna Decl. ¶¶ 37-38).

32.   In 1992 Blackheart Records, Inc. ("Blackheart") re-released the album <u>Bad Reputation</u>; this release of the album included the songs listed above along with additional sound recordings (Laguna Decl. ¶¶ 39-40).

33.   The 1992 re-release of <u>Bad Reputation</u> was also registered with the Copyright Office by Registration SR-196-477 which was ultimately transferred to Carianne (Laguna Decl. ¶ 41)

34.   The album <u>I Love Rock 'N' Roll</u> included recordings of the following compositions:

    (a) "I Love Rock 'N' Roll"
    (b) "(I'm Gonna) Run Away"
    (c) "Love is Pain"
    (d) "Nag"
    (e) "Crimson and Clover"
    (f) "Victim of Circumstance"
    (g) "Bits And Pieces"
    (h) "Be Straight"
    (i) "You're Too Possessive"
    (j) "Little Drummer Boy"

(Laguna Decl. ¶ 24).

10

35.   All of the recordings on I Love Rock 'N' Roll were registered with the Copyright Office by Registration SR-32-394, issued to Boardwalk (Laguna Decl. ¶ 25 and Exhibit 3 thereto).

36.   The individual recordings of "I Love Rock 'N' Roll" and "You Don't Know What You've Got" were also registered with the Copyright Office by Registration SR-32-501, also issued to Boardwalk (Laguna Decl. ¶ 26 and Exhibit 4 thereto).

37.   The individual recordings of "Crimson and Clover" and "Oh, Woe is Me" were also registered with the Copyright Office by Registration SR-32-501, also issued to Boardwalk (Laguna Decl. ¶ 27 and Exhibit 5 thereto).

38.   Through a series of assignments, the foregoing copyrights were ultimately assigned to Carianne (Laguna Decl. ¶ 29; see Compl. ¶ 44).

39.   In 1992, Blackheart re-released the album I Love Rock 'N' Roll; this release of the album included the songs listed above along with additional sound recordings (Laguna Decl. ¶¶ 30-31).

40.   The 1992 re-release of I Love Rock 'N' Roll was also registered with the Copyright Office by Registration SR-193-813 and was ultimately transferred to Carianne (Laguna Decl. ¶ 32).

2.   The Musical Composition
     <u>Copyrights in Issue</u>

41.   Jett and Laguna also authored, in whole or in part, the following musical compositions which were recorded on the album indicated and recorded with the Copyright Office by the registration indicated:

| <u>Composition</u> | <u>Album</u> | <u>Registration</u> |
|---|---|---|
| "Be Straight" | <u>I Love Rock 'N' Roll</u> | PA 130-932 |
| "Victim of Circum-stance" | <u>I Love Rock 'N' Roll</u> | PA 130-931 |
| "Bad Reputation" | <u>Bad Reputation</u> | PA 101-071, PA 133-023 |
| "You Don't Know What You've Got" | <u>Bad Reputation</u> | PA 133-025 |
| "Let Me Go" | <u>Bad Reputation</u> | PA 133-026 |
| "Jezebel" | <u>Bad Reputation</u> | PA 133-027 |

(Laguna Decl. ¶¶ 44, 45, 49, 51-53 and Exhibits 11, 12, 16, 19-21, thereto).

42.   Jett authored the following musical compositions which were recorded on the Album indicated and registered with the Copyright Office by the registration indicated:

| <u>Composition</u> | <u>Album</u> | <u>Registration</u> |
|---|---|---|
| "Love Is Pain" | <u>I Love Rock 'N' Roll</u> | PA 130-930 |
| "Oh Woe Is Me" | <u>I Love Rock 'N' Roll</u> | PA 130-918 |

12

| "(I'm Gonna) Run Away" | <u>I Love Rock 'N' Roll</u> | PA 130-929 |
| "Don't Abuse Me" | <u>Bad Reputation</u> | PA 101-074 |

(Laguna Decl. ¶¶ 46-48, 54 and Exhibits 13-15, 22, thereto).

  43. In addition to the foregoing, Jett and Laguna also purchased the copyright to the composition "Make Believe" which was recorded on the album <u>Bad Reputation</u> and registered with the Copyright Office by registration PA 133-024 (Laguna Decl. ¶ 50 and Exhibit 18 thereto).

  3. The Commercial Success of
    <u>Certain of the Works in Issue</u>

  44. Certain of the works in issue have enjoyed substantial commercial success.  Authoritative publications in the music industry reported that the song "I Love Rock 'N' Roll" was a number one hit for seven weeks and was listed on BillBoard's Top 40 Charts in 1982 for a total of sixteen weeks.  Similarly, Jett's recording of "Crimson and Clover" reached the number seven position and was on BillBoard's Top 40 Charts in 1982 for a total of ten weeks.  Jett's recording of "Do You Wanna Touch Me (Oh Yeah)" reached the number twenty position and was on BillBoard's Top 40 Charts for a total of seven weeks, also in 1982 (Laguna Decl. ¶59 and Exhibit 23 thereto).

  45. Jett's recording of "I Love Rock 'N' Roll" was the 27th top selling recording for the period from 1955 through 1986

and was the fifth best selling recording between 1980 and 1986
(Laguna Decl. ¶ 60).

46. Jett is widely known and the recordings from the
albums <u>Bad Reputation</u> and <u>I Love Rock 'N' Roll</u> have been featured
on television shows and commercials and have been included in
several compilations (Laguna Decl. ¶ 63).

> 4. Ficara and
>    Reach's Misconduct

47.  In the late 1990's, Ficara and Reach began falsely
advising people that they owned the then-defunct Boardwalk
Records and that they, therefore, owned Jett's recordings,
including the albums <u>Bad Reputation</u> and <u>I Love 'Rock 'N' Roll</u>
(Laguna Decl. ¶¶ 65-66).

48.  A few years after 1999, Ficara and Reach informed
third parties that they owned the rights to the albums <u>Bad
Reputation</u> and <u>I Love Rock 'N' Roll</u> and attempted to license the
rights to these albums to these third parties.  This conduct
prevented Carianne from granting licenses to these recordings and
the underlying compositions (Laguna Decl. ¶ 68).

49.  Carianne's attorneys wrote to Ficara and explained
to him why he could not have the right he claimed to have (Laguna
Decl. ¶ 69 and Exhibit 24 thereto).

50.  In February 2004, Carianne learned that parts of
the albums <u>Bad Reputation</u> and <u>I Love Rock 'N' Roll</u> were being

included in compilation recordings.  The parties responsible for
the compilation recordings claimed to have rights to the albums
through Ficara (Laguna Decl. ¶¶ 70-71 and Exhibits 25-26
thereto).

      51.  Several other parties have also exploited the
albums <u>Bad Reputation</u> and <u>I Love Rock 'N' Roll</u>.  Plaintiff has
not, however, offered any evidence that these other parties claim
rights through Ficara or Reach or that the conduct of Ficara or
Reach has any relationship to their misconduct (Laguna Decl. ¶ 72
and Exhibit 27 thereto).

      52.  Plaintiffs also contend that the confusion in the
market place created by the activities of Ficara and Reach caused
plaintiffs to lose two deals for the manufacture and distribution
of the albums <u>Bad Reputation</u> and <u>I Love Rock 'N' Roll</u>.  Plain-
tiffs, however, offer no explanation to support their conclusion
that Ficara and Reach's conduct caused these negotiations to
fail.  For example, plaintiff does not claim that the other
parties to the negotiations cited Ficara and Reach or their
putative licensees as the reasons for their unwillingness to
close.  In addition, no detailed information is provided concern-
ing the nature of the proposed transactions or how much revenue
they would have generated for plaintiffs (Laguna Decl. ¶ 73).  In
short, plaintiff's theory that Ficara and Reach's conduct caused

these transactions to fail is entirely unsubstantiated and speculative.

        5.  Ficara and
            Reach's Default

     53.  According to the docket sheet in this matter, Ficara and Reach were served in December 2004.  To date, the docket sheet does not indicate that either had answered or moved with respect to the complaint.  Accordingly, both Ficara and Reach are in default for a period in excess of two years.

III.  Conclusions of Law

    A.  Jurisdiction and Venue

     54.  This Court has subject matter jurisdiction over plaintiffs' claims pursuant 28 U.S.C. §§ 1331 and 1338(a).

     55.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because either all, or a substantial part of, the acts and omissions giving rise to plaintiffs' claim arose in this District.

16

B.   Ficara and Reach
     Have Committed
     Copyright Infringement

56.   17 U.S.C. § 501(a) provides, in pertinent part:

Anyone who violates any of the exclusive rights of
the copyright owner as provided by sections 106 through
118 . . . is an infringer of the copyright . . . ."

57.   17 U.S.C. § 106 provides, in pertinent part:

Subject to sections 107 through 120, the owner of
copyright under this title has the exclusive rights to
do and to authorize any of the following:

(1) to reproduce the copyrighted works in
copies or phonorecords;

* * *

(3) to distribute copies or phonorecords of
the copyrighted work to the public by sale or
other transfer of ownership, or by rental, lease
or lending . . . .

(Emphasis added.)

58.   Authorizing another to exploit the copyrights-in-

suit also is copyright infringement.  As stated by the Supreme

Court:

the Copyright Act grants the copyright holder "exclu-
sive" rights to use and to authorize the use of his
work in five qualified ways, including reproduction of
the copyrighted work in copies. Id., § 106. . . .

"Anyone who violates any of the exclusive rights
of the copyright owner," that is, anyone who trespasses
into his exclusive domain by using or authorizing the
use of the copyrighted work in one of the five ways set
forth in the statute, "is an infringer of the copy-
right." Id., § 501. . . .

17

Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 432-33 (1984) (emphasis added).  See also Tuff-N-Rumble Mgmt., Inc.  v. Sugarhill Music Publ'g Inc., 75 F. Supp.2d 242, 246-247 (S.D.N.Y. 1999).

59.  Thus, by purporting to authorize the manufacture and distribution of the albums Bad Reputation and I Love Rock 'N' Roll, Ficara and Reach have committed copyright infringement.

C.  Damages for
Copyright Infringement

60.  Because Ficara and Reach have defaulted and plaintiffs have, therefore, been unable to conduct discovery, there is no evidence in the record concerning Ficara and Reach's profits nor is there any other information available from which actual damages could be estimated.  Accordingly, plaintiffs have elected to seek statutory damages.

61.  17 U.S.C. § 504 provides, in pertinent part:

**(c) Statutory Damages.--**

**(1)**  Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of

this subsection, all parts of a compilation
or derivative work constitute one work.[4]

    **(2)**   In a case where the copyright owner
sustains the burden of proving, and the court
finds, that infringement was committed will-
fully, the court in its discretion may in-
crease the award of statutory damages to a
sum of not more than $150,000. . . .

62.   The Court has broad discretion, within the statu-
tory limits, in awarding statutory damages. Fitzgerald Publ'g
Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986); NFL
v. PrimeTime 24 Joint Venture, 131 F. Supp.2d 458, 472 (S.D.N.Y.
2001).

63.   In making such an award, the Court is required to
consider various factors, including the expenses saved and
profits reaped by the defendants, the revenues lost by the
plaintiffs, the value of the copyright, the deterrent effect of
the award on other potential infringers, and factors relating to
individual culpability. Fitzgerald Publ'g Co. v. Baylor Publ'g
Co., supra, 807 F.2d at 1117; Getaped.com, Inc. v. Cangemi, 188
F. Supp.2d 398, 403 (S.D.N.Y. 2002); Guess?, Inc. v. Gold Center
Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998); Schwartz-Liebman

---

    [4]In plaintiffs' proposed findings of fact and conclusions of
law, plaintiffs' counsel oddly omits the last sentence of
subsection 504(c)(1) notwithstanding the critical relationship of
this sentence to the calculation of statutory damages.  Given the
unmistakable importance of this sentence, the conclusion is
inescapable that counsel's omission of this sentence was
intentional.  This type of conduct serves no purpose except to
diminish the credence and reliance the Court affords to counsel's
statements.

Textiles v. Last Exit Corp., 815 F. Supp. 106, 108 (S.D.N.Y. 1992).

64.  The default judgment in this case, as well as the facts and circumstances described in Plaintiffs' complaint and the declaration of Kenneth Laguna submitted herewith support the inference that Ficara and Reach are willful infringers.  In particular, their continued infringement after notice of plaintiffs' rights is compelling evidence of willfulness.  Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 482 (Fed. Cir. 1985) (patent infringement).

65.  Defendants infringed two albums to which plaintiffs owned the copyrights -- Bad Reputation and I Love Rock 'N' Roll.  Plaintiffs seek a separate award of statutory damages for each performance copyright and each composition copyright applicable to the recordings on the two infringed albums.  This methodology is, however, defective as a matter of law.  As explained by the Honorable Jed S. Rakoff, United States District Judge, in Country Road Music v. MP3.com, Inc., 279 F. Supp.2d 325, 332 (S.D.N.Y. 2003):

> [P]laintiffs raise, apparently for purposes of any
> appeal, their disagreement with this Court's repeated
> prior rulings that statutory damages should be calcu-
> lated on a "per-CD," and not a "per-composition,"
> basis.  See TVT, 134 F. Supp.2d at 548; UMG Recordings,
> Inc. v. MP3.com, Inc., 109 F. Supp.2d 223 (S.D.N.Y.
> 2000).  But the Copyright Act unambiguously provides
> that a "compilation," although composed of "separate
> and independent works," 17 U.S.C.A. § 101 (West Supp.
> 2003), "constitute[s] one work" for purposes of calcu-

20

lating statutory damages, 17 U.S.C.A. § 504(c)(1) (West
Supp. 2003).  Thus, each CD that defendant copied to
its servers constitutes one work and the basis for one
statutory damage award, even though it might contain
multiple copyrighted musical compositions. Cf. Xoom,
Inc. v. Imageline, Inc., 323 F.3d 279, 285 (4th Cir.
2003).  Accordingly, as this Court has previously held,
any statutory damages will be calculated on a per-CD
basis.

Accord King Records, Inc. v. Bennett, 438 F. Supp.2d 812, 864-66

(M.D. Tenn. 2006); Arista Records, Inc. v. Flea World, Inc., 03-

2670 (JBS), 2006 WL 842883 at *21-*22 (D.N.J. Mar. 31, 2006);

Rocking Chair Enter. L.L.C. v. Macerich SCG Ltd. P'ship, 407 F.

Supp.2d 1263, 1268-69 (W.D. Okla. 2005).  Accordingly, I conclude

that only two "works" were infringed here -- the albums Bad

Reputation and I Love Rock 'N' Roll -- and that plaintiffs are,

therefore, entitled to statutory damages for the infringement of

two works only.

          66.  I conclude that plaintiffs are entitled to an

award of statutory damages of $125,000 for each infringed work

for a total of $250,000.  Defendants' conduct was clearly willful

and was clearly an attempt to profit from Jett's popularity.

These factors weigh in favor of an award of damages toward the

higher end of the applicable range.  On the other hand, plain-

tiffs' inability to offer any evidence at all on the volume of

the infringing sales suggests that the infringement was less than

massive.  Notwithstanding the default of Ficara and Reach, if the

infringing recordings were being sold in every CD outlet in the

country or even in a substantial number of CD outlets, plaintiffs would be able to provide this information notwithstanding the default of Ficara and Reach.  Plaintiffs' failure to offer any evidence regarding the volume of sales of the infringing recordings suggests that their sales were not huge.  This factor weighs in favor of a limited decrease in the amount of statutory damages awarded.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respectfully recommend that plaintiffs' motion for a default judgment as to Ficara and Reach be granted and that final judgment be entered against Ficara and Reach permanently enjoining them from further infringing plaintiffs' copyrighted works and awarding plaintiffs' judgment against Ficara and Reach, jointly and severally, in the amount of $250,000.

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of

the Honorable Richard M. Berman, United States District Judge,
500 Pearl Street, Room 650, New York, New York 10007, and to the
chambers of the undersigned, 500 Pearl Street, Room 750, New
York, New York 10007.  Any requests for an extension of time for
filing objections must be directed to Judge Berman.  FAILURE TO
OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140
(1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054
(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.
1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.
1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         June 29, 2007

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copy transmitted to:

Oren J. Warshavsky, Esq.
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, New York  10174

Copies mailed to:

Mr. Thomas Ficara
211 Priority Point Street
Henderson, Nevada  89012.

each Entertainment, Inc.
1631 Equestrian Drive
Henderson, Nevada  89015